**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

REDIFORD B.,[1]                          )
                                         )
    *Plaintiff*,                      )
                                         )
       v.                          )     Case No. 3:23-cv-75-MHL-SLS
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of the               )
Social Security Administration,          )
                                         )
    *Defendant*.                      )
_____  )

## REPORT AND RECOMMENDATION

In this action, Plaintiff Rediford B. seeks review of the Commissioner ("Commissioner") of the Social Security Administration's ("SSA") decision to deny Plaintiff's Title XVI application for Supplemental Security Income ("SSI"). This matter now comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment. (ECF Nos. 12, 15, 17.) The motions have been fully briefed, rendering this matter ripe for disposition.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Brief in Support of a Motion for Summary Judgment at 18 (ECF No. 13) ("Pl.'s Mem.").). As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ") determination that he was not disabled from April 20, 2018 to January 8, 2021 is not supported by substantial evidence because he failed to evaluate medical opinion

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

evidence in accordance with the regulations.  (Pl.'s Mem. at 2, 9.)  Specifically, Plaintiff argues that the ALJ erred in finding the medical opinion of Plaintiff's treatment provider, Robert Good, M.D. ("Dr. Good"), unpersuasive.  (Pl.'s Mem. at 9-18.)  In response, Defendant argues that the ALJ properly considered and analyzed Dr. Good's opinion.  (Defendant's Motion for Summary Judgment and Brief in Support Thereof at 15-21 (ECF No. 15) ("Def.'s Mem.").)

For the reasons set forth below, the Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and that substantial evidence supports the ALJ's disability determinations.  Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

Plaintiff's application for benefits alleged that he suffers from high cholesterol, high blood pressure, chronic obstructive pulmonary disease ("COPD"), sleep apnea, type 2 diabetes, a hernia, and asthma.[2]  (Administrative Record ("R.") at 87-88.)  He initially alleged an onset of disability as of December 1, 2016, but later amended the onset date to April 20, 2018.  (R. at 18, 38, 86, 88, 656.)

On November 19, 2019, an ALJ found that Plaintiff was not disabled from April 20, 2018 to November 19, 2019, and the Appeals Council denied Plaintiff's request for review.  (R. at 1-3, 18-28.)  Plaintiff initiated a prior civil action seeking judicial review of the Commissioner's

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

decision. *Rediford B. v. Kijakazi*, Case No. 3:21cv201-REP-MRC (E.D. Va. Filed Mar. 24, 2021); (R. at 695). On December 28, 2021, the Eastern District of Virginia remanded the case for further proceedings after the Commissioner requested a voluntary remand for further administrative proceedings. (R. at 695.)

Plaintiff filed a subsequent application and was found disabled as of March 31, 2021. (R. at 656.) The Appeals Council ordered the ALJ to issue a decision adjudicating disability prior to that date. (R. at 656, 701.) A hearing was held on November 9, 2022. (R. at 676-93.)

In an opinion dated November 21, 2022, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with noted exceptions and was not disabled between April 20, 2018 (the alleged onset date) and January 8, 2021. (R. at 655-65.) The ALJ also determined that on January 9, 2021, Plaintiff's age category changed to an individual of advanced age, rendering him disabled because there were no jobs in the national economy that he could perform given his vocational skills and RFC. (R. at 656, 644.)

The ALJ's decision became the final decision of the Commissioner. (R. at 653.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff challenges only the denial of benefits from April 20, 2018 through January 8, 2021. (Pl.'s Mem. at 2.) Therefore, the Court will only address the ALJ's analysis as relevant to those pertinent dates.

## II.    STANDARD OF REVIEW

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423 (d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his past employment given his residual functional capacity. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis: he must prove that his limitations preclude him from performing his past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472. If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The

4

Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings

are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

## III.    THE ALJ'S DECISION

In the November 21, 2022 decision, the ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 655-65.)  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634 (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity from April 20, 2018 to March 30, 2021.  (R. at 658.)  At step two, the ALJ determined Plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea, and obesity.  (R. at 658-59.)  At step three, the ALJ determined that between April 20, 2018 and March 30, 2021, Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 659.)

The ALJ then determined Plaintiff's RFC.  (R. at 659-64.)  Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. 416.967(b) with the following limitations:

> [Plaintiff] could occasionally stoop and climb ramps and stairs.  [Plaintiff] could never climb ladders, ropes, or scaffolds.  [Plaintiff] could tolerate occasional exposure to humidity, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat.  [Plaintiff] could not work at unprotected heights.

(R. at 659-60.)

The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (R. at 660.)  The ALJ considered Plaintiff's testimony regarding the intensity, persistence,

6

and functionally limiting effects of his symptoms.  (R. at 660.)  Plaintiff testified that he had difficulty breathing, which was made worse with walking, heat, and humidity.  (R. at 660, 661.) He also testified he was frequently tired and fatigued and took naps during the day.  (R. at 660, 661.)  Nevertheless, Plaintiff testified that he could care for his personal needs, do some small household repairs, and perform light household chores, like taking out the trash, doing laundry, preparing simple meals, and feeding his dog.  (R. at 660.)  Plaintiff also testified that he could drive a short distance to the grocery store twice a week, walk 50 yards before needing to rest, stand for up to 15 minutes, and lift up to 20 pounds.  (R. at 660.)  "After careful consideration of the evidence," the ALJ found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision."  (R. at 660.)

With citations to the record, the ALJ noted that Plaintiff "did not describe substantial symptoms associated with" his COPD and sleep apnea when meeting with providers, and his "examinations were generally normal."  (R. at 661.)  Thus, the ALJ found that the symptoms resulting from Plaintiff's "COPD and sleep apnea limited him to work at the light exertional level and further affected his ability to perform postural tasks and interact with certain environmental conditions."  (R. at 661.)  The ALJ also found that Plaintiff's "obesity exacerbated his other impairments" and "contributed to his physical limitations."  (R. at 661.)  However, the ALJ determined that "objective evidence" did not "fully support" Plaintiff's statements regarding the intensity, persistence, or limiting effects of the symptoms.  (R. at 661.)  The ALJ explained:

> Physical examinations of [Plaintiff] conducted during the relevant period were entirely unremarkable, with providers routinely failing to describe any abnormalities in his gait or lungs during appointments.  Likewise, clinicians did not note that he appeared tired during appointments or that he had trouble standing or walking.  In addition, while the claimant did attend relatively regular medical appointments during the period at issue here, he did not require care specifically for

his COPD or obstructive sleep apnea.  Instead, these conditions were treated by his primary care provider who did not recommend that he pursue more aggressive treatment to help manage his symptoms.  Finally, [Plaintiff] was able to care for his personal needs, prepare simple meals, do a few chores around the house, and drive.  He routinely told this agency that he needed to rest frequently while completing these tasks, but he did not mention this to treating and examining providers.  Instead, in July 2018, [Plaintiff] indicated that he was able to cook three times per week, clean, do laundry, and shop on[ce] a week, and shower and dress daily.  Then, in August 2019, he stated that he traveled frequently between multiple states to visit his children.  Although [Plaintiff's] impairments did cause some symptoms, the objective findings contained in the record, the conservative care he received his admitted ability to perform some daily tasks independently, and his statements to providers all suggest that these symptoms were not as severe or as limiting as he claims.

(R. at 661 (internal citations omitted).)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c."  (R. at 660.)  The ALJ considered the opinions from two state agency reviewing physicians, which stated Plaintiff "could stand and walk for about six hours in an eight-hour day, and could sit for about six hours," "could lift and carry 20 pounds occasionally and ten pounds frequently," "could occasionally climb ramps and stairs, and stoop, but . . . never climb ladders, ropes, or scaffolds," and "needed to avoid concentrated exposure to extreme cold, extreme heat, humidity, pulmonary irritants, and hazards."  (R. at 662.)  The ALJ reviewed record evidence in relation to each limitation and found these opinions "largely consistent with the evidence" and supported with explanations.  (R. at 662.)  The ALJ found that Plaintiff was not as limited in lifting or carrying as these state agency reviewing physicians found him to be based on Plaintiff's testimony that he could lift up to 20 pounds and the fact that clinicians did not note any diminished strength on examination.  (R. at 662.)  But otherwise, the ALJ found those opinions "persuasive."  (R. at 662.)

The ALJ considered the opinion of Ahmed Kneifati, M.D. ("Dr. Kneifati") who examined Plaintiff in July 2018.  (R. at 662.)  Dr. Kneifati found that Plaintiff could "walk for two hours in

an eight-hour day, or ten minutes at a time," "sit and stand for eight hours each both at one time and in an eight-hour day," "lift and carry up to 20 pounds occasionally and up to ten pounds frequently," "frequently operate foot controls with the bilateral lower extremities," "occasionally climb, balance, stoop, kneel, crouch, and crawl," "occasionally work around unprotected heights, moving mechanical parts, humidity, wetness, extreme heat, and extreme cold," "occasionally operate a motor vehicle," and "never interact with dust, odors, fumes, or pulmonary irritants." (R. at 662-63.) The ALJ found this opinion inconsistent with the evidence, which showed Plaintiff had "a greater capacity for walking, balancing, kneeling, crouching, crawling, and working around dust, odors, fumes, and pulmonary irritants." (R. at 663.) The ALJ also found this opinion "not supported by Dr. Kneifati's own examination report, which document[ed] no abnormalities in [Plaintiff's] physical presentation." (R. at 663.) Therefore, the ALJ did not find Dr. Kneifati's opinion persuasive. (R. at 663.)

The ALJ also considered the medical opinion of Plaintiff's treating physician, Dr. Good. (R. at 663.) Dr. Good assessed Plaintiff on March 4, 2019. (R. at 575-76.) Dr. Good began his report by striking through the title of "Physical Assessment" and titling it "Subjective Assessment." (R. at 575-76.) He diagnosed Plaintiff with diabetes, morbid obesity, and "smoker." (R. at 575.) Dr. Good stated that Plaintiff would need to recline or lie down more than the typical amount in an 8-hour workday (the typical amount being two 15-minute breaks and a 30–60-minute lunch break) and would require unscheduled breaks. (R. at 575.) Dr. Good opined that Plaintiff could sit for up to 4 hours in a workday, with the notation that he "falls asleep" and that he could stand/walk for 30 minutes in a workday. (R. at 575.) Dr. Good furthered that Plaintiff could lift and carry 10 pounds occasionally, that his symptoms would often be severe enough to impact his concentration and attention at work, and that he would likely be absent from work more than 4

9

times a month.  (R. at 575-76.)  Lastly, Dr. Good noted that Plaintiff would need additional evaluations, such as a pulmonary evaluation and functional capacity evaluation, to align Plaintiff's "impairments (physical impairments plus any emotional impairments)" with "the symptoms and functional limitations described in this evaluation."  (R. at 576.)

In considering Dr. Good's medical opinion, the ALJ explained:

[Dr. Good's] opinion is not consistent with the evidence.  As previously discussed, that evidence demonstrates that [Plaintiff] was not as limited in sitting, standing, walking, lifting, or carrying as Dr. Good finds him to be.  In addition, no provider ever described any deficits in [Plaintiff's] attention or concentration during appointments…. This suggests that he was capable of sustaining attention for work activities of varying complexity without restriction.  Similarly, while [Plaintiff] has stated that he was tired during the day, and often fell asleep while seated, there is no objective evidence of this in the file and treatment providers did not indicate that he appeared fatigued during appointments.  Further, he did not discuss his difficulty remaining awake with his treating clinicians…. This implies that he could complete a workday without lying down or taking additional breaks.  Finally, [Plaintiff] attended medical appointments without an unreasonable number of absences, and he indicated that he completed a variety of daily tasks and traveled frequently…. This implies that he could adhere to a routine, and that he would have been able to attend work without an unreasonable number of absences.  Finally, this opinion is not supported by Dr. Good's own examination notes, which document no objective abnormalities in [Plaintiff's] physical presentation, or with the conservative care he opted to provide [Plaintiff].  For these reasons, the undersigned does not find this opinion persuasive.

(R. at 663 (internal citations omitted).)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors.  He found that Plaintiff had no past relevant work, met the definition of an individual closely approaching advanced age at the time of the onset, but on January 9, 2021, "changed to an individual of advanced age (20 CFR 416.963)," and had at least a high school education.  (R. at 664.)

At step five, the ALJ concluded that prior to January 9, 2021, there were a significant number of jobs in the national economy that Plaintiff could have performed given his limitations.

(R. at 664-65.)  The ALJ adopted the Vocational Expert's testimony that Plaintiff could perform the jobs of subassembler, sorting clerk, and bench assembler.  (R. at 664-65.)  The ALJ also opined that following January 9, 2021, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 665.)

## IV.    ANALYSIS

Plaintiff contends that the ALJ's RFC determination lacks substantial evidence because she failed to evaluate the opinion of treating physician, Dr. Good, in accordance with applicable regulations.  (Pl.'s Mem. at 10.)  In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence.  *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340).  "In reviewing for substantial evidence, [the court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).  Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a de novo review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

With this standard in mind, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff is not disabled, that the ALJ properly explained her findings sufficient to allow meaningful judicial review, and that the ALJ's decision was reached upon a correct application of the relevant law.

### A. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  This framework applies in Plaintiff's case because he amended the onset date to April 20, 2018.  (R. at 18, 38, 86, 656.)  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Plaintiff concedes this fact.  (Pl.'s Mem. at 10.)

The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source.   20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements.  *Id*.  §§ 404.1520c, 416.920c(b)-(c).  Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

### B. The ALJ Applied Correct Legal Standards in Evaluating Dr. Good's Opinion and the ALJ's Findings Are Supported by Substantial Evidence

As stated above, the regulations require that the ALJ explain how she considered the consistency and supportability of the medical opinions and why—based on the evidence—the ALJ reached the conclusion she did as to the persuasiveness of the opinions.  *See* 20 C.F.R. § 404.1520c(a)–(b).  In doing so, the ALJ must "build an accurate and logical bridge from the evidence to h[er] conclusion."  *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

Plaintiff argues that the RFC determination was not supported by substantial evidence because the ALJ improperly rejected Dr. Good's opinion evidence.  Specifically, Plaintiff asserts that the ALJ erred by: (1) failing to cite specific evidence to support her conclusions about the weight to be afforded to Dr. Good's opinion evidence; (2) cherrypicking the record and ignoring objective evidence that supported Dr. Good's opinion; and (3) citing to conversative care to discredit Dr. Good's opinion.  (Pl.'s Mem. at 11-16.)  The Court addresses each argument below and finds no reversable error in the ALJ's opinion.

### 1. The ALJ built a logical bridge from the evidence to her conclusion regarding Plaintiff's ability to sit, stand, walk, lift, or carry.

The ALJ satisfied the regulations when she found Dr. Good's opinion not persuasive.  The ALJ first summarized and reiterated Dr. Good's findings.  (R. at 663.)   She then noted discrepancies between the evaluation and other medical evidence on file.  (R. at 663.)  The ALJ appropriately analyzed Dr. Good's opinion as required by applicable regulations, noting that his

opinion was unpersuasive because it lacked both support from and consistency with the rest of the record.  (R. at 663.)  The ALJ complied with SSR 96-8p, which requires the ALJ to address all medical source opinions and explain why an opinion was not adopted.  *See* SSR 96-8p, 61 Fed. Reg. 34,479 (July 2, 1996).

Plaintiff challenges the ALJ's conclusion that "th[e] evidence demonstrates that [Plaintiff] was not as limited in sitting, standing, walking, lifting, or carrying as Dr. Good finds him to be" as "bald" and "unsupported."  (Pl.'s Mem. at 11-12; R. at 663.)  Plaintiff cites *Dogan v. Kijakazi*, 2022 WL 4092461 (D.S.C. Sept. 7, 2022), and *John H. v. Kijakazi*, 2022 WL 610830 (W.D. Va. Mar. 2, 2022), to support his argument.  (Pl.'s Mem. at 12.)  The Court finds these decisions distinguishable.  In *Dogan*, the United States District Court of South Carolina rejected the ALJ's use of "simple boilerplate language" because it failed to build a logical bridge from the record to the conclusion.  2022 WL 4092461, at *4.  In that case, the ALJ, without more, rejected the medical opinion by stating that the "indication that the claimant could not perform work on a sustained basis [was] not persuasive, because that proposition [was] not supported with the record as a whole."  *Id.*  In *John H.*, the ALJ determined that the claimant "must be able to be off-task 7% of the time and miss nine days of work a year" to accommodate his pain but failed to cite any record evidence to support how the ALJ arrived at those specific numbers.  2022 WL 610830, at *9.  That made "'it difficult, if not impossible,' for the Court to determine 'whether their inclusion in [the claimant's] RFC is supported by substantial evidence' in the record."  *Id.* (quoting *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)).

Unlike in those cases, the ALJ here properly analyzed the opinion compared to the record and made references to portions of the record.  The ALJ incorporates "previously discussed" findings regarding functional limitations in sitting, standing, walking, lifting, and carrying.  (R. at

663.)  The ALJ also discusses and identifies record evidence inconsistent with Dr. Good's opinion.  (R. at 663.)  Thus, the Court rejects Plaintiff's label of the ALJ's conclusion as mere boilerplate.  To be sure, there is no requirement that the ALJ point to every specific piece of evidence in adopting or rejecting a medical opinion as persuasive.  *See Owens v. Kijakazi*, 2023 WL 2344224, at *3 (4th Cir. 2023); *see also Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019).  Rather, the ALJ is required to fashion enough narrative to provide meaningful review.  *Owens*, 2023 WL 2344224, at *3.  Here, the ALJ met its burden.

Plaintiff urges the Court to reject the summary of the evidence found elsewhere in the ALJ's opinion and the string cite to Exhibits 4F, 7F-9F, 11F-13F, and 17F as insufficient.  (Pl.'s Mem. at 12-13.)  Plaintiff cites *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016), and *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018), to support his assertion that an ALJ's failure to specify what evidence she was referring to precludes meaningful review.  (Pl.'s Mem. at 12.)  But in contrast to the ALJ decisions at issue in those opinions, here, the ALJ provided examples of the differences between Dr. Good's opinion and the other evidence and testimonies on file and does not make a conclusory statement.

In the preceding pages of her opinion, the ALJ outlines the evidence in conflict with Dr. Good's opinion, including Plaintiff's own statements about his ability to care for his personal needs, prepare simple meals, do a few chores around the house, drive, and travel to multiple states to visit his children.  (R. at 661-62.)  In addition, state agency reviewing physician, Ruth Arnold, D.O. ("Dr. Arnold"), had opined that Plaintiff could stand and walk for about 6 hours in a workday and sit for the same amount of time.  (R. at 93, 662.)  Dr. Arnold stated that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  (R. at 93, 662.)  Dr. Arnold found that Plaintiff could occasionally climb ramps and stairs and occasionally stoop, but could never climb

ladders, ropes, or scaffolds.  (R. at 93-94, 662.)  R.S. Kadian, M.D., another state agency reviewing physician, reiterated Dr. Arnold's opinion.  (R. at 108-10, 662.)  Thus, much like the ALJ's conclusions in *Ladda v. Berryhill*, the ALJ here sufficiently explained her conclusions.  749 F. App'x 166, 172 (4th Cir. 2018) (noting that in contrast to *Monroe*, the ALJ "used evidence from the record to explain his finding that [the plaintiff] was capable of light work. For example, the ALJ noted that [the plaintiff] claimed that he could walk for only ten to fifteen minutes at a time and could not lift ten pounds, but he explained that the other evidence in the record, such as medical records and opinion evidence, did not fully substantiate these claims. The ALJ also explained the relative weight he assigned to the statements made by [the plaintiff], [the plaintiff's] treating physician, and the state agency medical consultants. The ALJ provided a sufficiently thorough discussion for us to agree that his conclusion that [the plaintiff] was limited to light work was supported by substantial evidence.")

The Court finds no error in the ALJ's review.  The ALJ's decision built a logical bridge from the record evidence to her conclusions which allows the Court to conduct a meaningful judicial review.  *See Owens*, 2023 WL 2344224, at *3; *Thomas*, 916 F.3d at 312.  And the Court declines any invitation to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  *See Mastro*, 270 F.3d at 176.

2.  <u>The ALJ did not cherrypick evidence regarding fatigue, shortness of breath, or sleep apnea.</u>

Plaintiff next argues that the ALJ committed error when she refused to acknowledge references in the record to Plaintiff's fatigue, shortness of breath, and sleep apnea.  (Pl.'s Mem. at 15.)  In this way, Plaintiff contends that the ALJ "cherrypicked" evidence, and that had Plaintiff's fatigue, shortness of breath, or sleep apnea been considered by the ALJ, the outcome would have

been different.  (Pl.'s Mem. at 14-15.)  The Court finds that the ALJ did not engage in improper "cherrypicking" of record evidence.

The ALJ has an "obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."  *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).  The Fourth Circuit has found cherrypicking where it is clear the ALJ chose to ignore certain statements or facts, sometimes contained in the same medical report.  *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 362 (4th Cir. 2023) (outlining how the ALJ clearly ignored evidence of the claimant's suicidal thoughts for evidence of sparse social activities and her lack of plans to end her life, thereby "highlighting [claimant's] good moments and bypassing the bad"); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 99 (4th Cir. 2020) (finding that the ALJ mischaracterized claimant's fibromyalgia pain by cherrypicking evidence from observations recorded on the same day); *Lewis*, 858 F.3d at 869 (holding the ALJ improperly cherrypicked the "normal" findings from the rest of that day's medical report which contained evidence of intense pain).  No such error occurred here.

Plaintiff points out instances wherein Dr. Good notes Plaintiff's troubled breathing, difficulty sleeping or walking, and need for an inhaler.  (Pl.'s Mem. at 12-13, 15.)  For example, Plaintiff references portions of the record showing: (1) Plaintiff had trouble breathing and was prescribed an inhaler in 2016 (R. at 323); (2) Plaintiff's diagnosis of COPD, asthma, and sleep apnea in 2018 (R. at 489); (3) a pulmonary function test reflecting moderate airflow obstruction and reduced lung volumes in 2019 (R. at 581); and (4) a 2019 sleep study which showed a high number of apnea events per hour (R. at 578).  (Pl.'s Mem. at 15.)

Despite Plaintiff's contention otherwise, the ALJ acknowledged this "long history of COPD and sleep apnea."  (R. at 661.)  But the ALJ also noted that Plaintiff "did not require

treatment specifically for these problems during the period at issue here." (R. at 661.) While the ALJ acknowledged that Plaintiff told providers he used his inhaler a few times per week and that a "pulmonary function testing was consistent with COPD," the ALJ also found it significant that Plaintiff reported "not using his continuous positive airway pressure machine at night" and "did not describe substantial symptoms associated with these impairments." (R. at 661.) Moreover, "[p]hysical examinations of [Plaintiff] conducted during the relevant period were entirely unremarkable, with providers routinely failing to describe any abnormalities in his gait or lungs during appointments" and providers failing to comment on any appearance of fatigue. (R. at 661.) Dr. Good's own medical reports showed that Plaintiff reported feeling well, did not suffer from wheezing, trouble breathing, or any acute distress, and had clear lungs and a regular heart rate. (R. at 381, 386-87, 545-47, 556-58, 587-90.) While a May 2018 report from Dr. Good noted that Plaintiff was more tired when his blood sugar fell below 150 (R. at 480), a July 2018 report stated Plaintiff had more energy after he had resumed taking his medications (R. at 545). In November 2018, Dr. Good reported that Plaintiff had worse breathing "at times" (R. at 556) but reported that his breathing was "unlabored" and void of wheezing in June 2019 (R. at 590). The record also showed that Plaintiff had the ability to travel, shop, climb steps, cook, and use public transportation despite his limitations. (R. at 487, 501-06, 661.)

Far from epitomizing cherrypicking, the ALJ's decision reflects a careful consideration of the record as a whole. While Plaintiff points to conflicting evidence in the record, it is not within the Court's purview to re-weigh evidence that the ALJ considered. *See Mastro*, 270 F.3d at 176. Because the ALJ applied the correct legal standards in finding Dr. Good's opinion unpersuasive and substantial evidence supports that finding, the Court will not disturb the ALJ's decision.

> 3. <u>The ALJ did not err in characterizing Dr. Good's treatment as "conservative" or in considering the nature of this treatment as a factor in deciding the persuasiveness of Dr. Good's opinion.</u>

Plaintiff next argues that the ALJ erred by characterizing Dr. Good's treatment as conservative and in failing to elaborate on how such "conservative" treatment detracted from Dr. Good's opinion. (Pl.'s Mem. at 15-16.) The Court finds this argument unavailing.

In conducting the RFC assessment, the ALJ stated that "[a]lthough [Plaintiff's] impairments did cause some symptoms, the objective findings contained in the record, the conservative care he received, his admitted ability to perform some daily tasks independently, and his statements to providers all suggest that these symptoms were not as severe or as limiting as he claims." (R. at 661.) The ALJ again referenced the conservative treatment when discussing Dr. Good's opinion: "[T]his opinion is not supported by Dr. Good's own examination notes, which document no objective abnormalities in [Plaintiff's] physical presentation, or with the conservative care he opted to provide [Plaintiff.]" (R. at 663.) In both instances, the ALJ lists the conservative treatment as one factor, among many, to support her findings.

Moreover, the ALJ supports her characterization of the treatment as conservative. Specifically, the ALJ found that Plaintiff "did not require treatment specifically for [COPD and sleep apnea] during the period at issue," "did not describe substantial symptoms associated with these impairments," and "stated that he was not using his continuous positive airway pressure machine at night." (R. at 661.) The ALJ noted that Plaintiff's COPD and sleep apnea "conditions were treated by his primary care provider who did not recommend that he pursue more aggressive treatment to help manage his symptoms." (R. at 661.) The ALJ also acknowledged that treatment providers diagnosed Plaintiff with obesity and "advised him that losing weight may help improve

his functioning." (R. at 661.) Therefore, the ALJ's decisions provides ample explanation for her "conservative" characterization of the treatment received.

Citing *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017), Plaintiff contends this characterization nonetheless constitutes error because the Fourth Circuit prohibits ALJs from "playing doctor." (Pl.'s Mem. at 16.) The Court finds *Lewis* distinguishable. In that case, the Fourth Circuit found that an ALJ improperly concluded that a claimant's treatment was conservative when procedures such as nerve blocks and ablation preceded surgical intervention. 858 F.3d at 869 ("[The claimant's] multiple medical conditions require her to take powerful analgesics, including Fentanyl and Oxycodone. Furthermore, [the claimant] endured multiple surgeries, one of which required removal of her first left rib to alleviate pain. Before those surgeries, [the claimant] underwent a lumbar epidural injection, two supraspinatus nerve blocks, and a radiofrequency ablation of her supraspinatus nerve. In light of the extensive treatment [the claimant] received for her various conditions, the ALJ's designation of [the claimant's] course of treatment as 'conservative' amounts to improperly 'playing doctor' in contravention of the requirements of applicable regulations."). Unlike in *Lewis*, a review of the record here indicates that Plaintiff's treatment can be fairly labeled as conservative. Although Plaintiff may disagree with this characterization, the Court is not tasked with determining whether the evidence could have pointed to another conclusion but rather whether the ALJ followed the law. Here, the ALJ supported her conclusion that the treatment received was conservative and considered that as one factor among others supporting her RFC assessment. The ALJ did not commit legal error in doing so.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: November 9, 2023